**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**

| | |
|---|---|
| **LUCIEN J. TUJAGUE, JR.** | § § § § |
| **v.** | § § § § CIVIL ACTION NO. 2:18- § § |
| **JASON ELBERT ADKINS**<br>**THE CASTRO FAMILY TRUST, LLC** | § |

**PLAINTIFF'S ORIGINAL COMPLAINT AGAINST JASON ELBERT ADKINS AND THE CASTRO FAMILY TRUST, LLC**

TO THE HONORABLE JUDGE AMOS MAZZANT, III:

NOW COMES Plaintiff, LUCIEN J. TUJAGUE, JR. and files this his Plaintiff's Original Complaint against JASON ELBERT ADKINS and THE CASTRO FAMILY TRUST, LLC.

**I.**

**PARTIES AND SERVICE**

1. Plaintiff is a citizen of the United States, the State of Texas, and a resident of Dallas County, Texas.

2. Defendant JASON ELBERT ADKINS is a citizen of the United States, and a resident of the State of Ohio who may be served with process at his residence of 885 Sternberger Road, Jackson, Ohio, 45640 or wherever he may be found.

3. Defendant THE CASTRO FAMILY TRUST, LLC is a limited liability company and may be served with process by serving one or both of its managing members DONNA CASTRO or DAN CASTRO at their residence at 5313 Settlement Way, McKinney, Texas

PLAINTIFF'S ORIGINAL COMPLAINT

75070 or wherever they may be found.

## JURISIDCTION

4. The action arises under Title 18 U.S.C. § 1962.

5. This Court has jurisdiction under these claims pursuant to Title 28 U.S.C. §§ 1331, and 1367. As the matter in controversy exceeds $75,000.00 between citizens of diverse states, this Court likewise has jurisdiction pursuant to Title 28 U.S.C. § 1332.

## VENUE

6. Venue is proper in that the Defendant resides in the Eastern District of Texas, and that some of the events made the basis of this suit occurred there, and that real property that is the subject of this action is likewise located there. Title 28 U.S.C. § 1391(b)(1), (b)(2).

## NATURE OF ACTION

7. This action arises from a series of violations of the Racketeer Influenced and Corrupt Organizations Act (RICO), fraud and fraudulent conveyances. Title 18 U.S.C. § 1962.

## CONDITIONS AND PRECEDENTS

8. All conditions precedent to jurisdiction have occurred or been complied with.

## II.

## FACTS[1]

### ADKINS LURES PLAINTIFF TO INVEST $12.9 MILLION

### IN MINING AND INDUSTRIAL TIRE BUSINESS

8. Plaintiff LUCIEN J. TUJAGUE, Jr. is a Dallas businessman, and investor. In late

---

[1] This action arises out of the same facts and circumstances of the action Plaintiff filed against an Adkins co-conspirator in *Lucien J. Tujague v. John Eckerd et al.,* Civil Action. No. 4:18-cv-0408. As the Court will recall, Eckerd and the related entities there filed bankruptcies, staying that action. As a result, for the convenience of the Court, Plaintiff incorporates by reference and relies on the Court's previous orders, (Dkt. #7, Dkt. #27, Dkt. #31) the filed exhibits, and the sworn testimony from that proceeding.

2015, Plaintiff is introduced to JASON ADKINS, a resident of Ohio, through a mutual acquaintance. Based on a number of representations Adkins made to him about his skills, knowledge, and relationships in the sale of "Off the Road" (OTR) tires, massive specialized tires employed on mining, construction, and industrial sites, Plaintiff and Adkins began communicating about Plaintiff investing in enterprises related to the acquisition and sale of the tries. OTR tires are gigantic tires specially designed for heavy mining and industrial applications and are commonly seen on "Mega" Truck manufactured by companies, like Caterpillar. Because of their massive size, and specialized use they can sell for anywhere between $35,000 to $100,000. As a result of the substantial expense of the tires, and the unpredictable timing and duration of their use at a particular work site, there is a substantial secondary brokerage between users and wholesale distributors. It was this market that Adkins had enticed Plaintiff, who had had great success in the energy and real estate businesses, but was completely new to this market, to invest in the OTR tire business.

### PLAINTIFF INVESTS $12.9M AS ADKINS CONTINUES TO TRAP HIM

12. Following Adkins's solicitations to Plaintiff here in Texas, over the two years that followed, Plaintiff invested, at least, $12,920,550.00 in some forty transactions. The first transaction occurred on **February 18, 2016** and the last occurred on or about **November 14, 2017**. Plaintiff's payments were drawn from electronic wires from his bank in Dallas County, Texas.

13. As the information was presented to Plaintiff, Adkins would apprise him of one or more deals by phone or email. The information would identify the supplier of the tires, and the end consumer, often a mining or construction firm. Adkins would also identify any other potential investors in the transaction. Adkins would often suggest to Plaintiff that he could cover

the entire transaction, so that others "wouldn't be able to get in on the deal."

14. Adkins would provide proof that he had already acquired the tires thus causing Plaintiff to wire funds to Adkins through his Landash Corporation. What Plaintiff did not know, though, was that the money and/or the proceeds of transactions were being diverted to Adkins and his co-conspirators. During this period, the 38-year-old Adkins had virtually daily communications with Plaintiff. Adkins solicited his friendship, flying him on planes that Adkins asserted he owned, introducing him to associates, and allowing him to inspect tire inventories at the Houston XPO location. Adkins further lured Plaintiff into his trust by inviting Plaintiff to his home in Ohio, and to Cleveland Cavalier basketball games, among other outings and events.

## LANDASH AND ADKINS GO BANKRUPT

15. In the summer of 2017, Adkins began communicating with Plaintiff through his attorney. Adkins and the attorney urged to Plaintiff that the bankruptcy will not affect Plaintiff's investments. On January 22, 2018, Landash files a Chapter 11 Bankruptcy in the Southern District of Ohio in Cause No. 2:2018-BK-50300. Only weeks later on February 9, 2018 Adkins files his own Chapter 7 bankruptcy in the Southern District of Ohio, as well, in 2:2018-BK-50671.

## ADKINS TAKES THE 5TH AND TRUSTEE TAKES DEFAULT JUDGMENT

16. In only weeks, it is soon apparent that the bankruptcy too is a sham. At an initial hearing of his own bankruptcy, Adkins appears only by phone, asserting a dubious ailment. He then repeatedly invokes his privilege against self-incrimination. He subsequently fails to cooperate with the bankruptcy trustee. On June 1, 2018, the bankruptcy trustee moved for default in an adversarial proceeding against Adkins. It soon becomes apparent that many of the transactions were elaborate contrivances that was one-part Charles Ponzi, and one-part Billy Sol Estes. In

PLAINTIFF'S ORIGINAL COMPLAINT

those instances where tires were actually acquired, they were not delivered to the end users. Plaintiff did not receive any of his $12.9 million, much less than the large gross profits anticipated from more than $75 million in total tire sales. Agreeing with the trustee, On June 29, 2018 judgment was entered holding that Adkins could not discharge any of his debts and dissolving the stay of litigation[2] against him. **Exhibit "A,"** *Judgment and Order Granting Motion for Default Judgment and Denying Discharge,* Case No. 18-02-043, *In Re JASON E. ADKINS,* U.S. Bankruptcy Court for the Southern District of Ohio, Eastern Division at Columbus. (Dkt. #113).

## WHERE THE MONEY WENT

17. Through various shell companies, Defendant Adkins, co-conspirator and others John Eckerd[3] controlled Landash Corporation, and its related entities, including LANDASH TX, LLC. Plaintiff has since learned that following a number of transactions, portions of funds sent to Landash or Adkins were then delivered to Eckerd. Adkins and Eckerd have, furthermore, an established pattern of defrauding creditors in relation to tire transactions. *See* ***Case Pro-logistics Forwarding LTD. v. Robison Tire Co., Inc.*** **Civil Action No. 2:13-CV-83, U.S. District Court, Southern District of Mississippi—Hattiesburg Division;** *Star Funding v. Vault Minerals, et al.***, Civil Action No. 1:15-CV-3026, U.S. District Court, Southern District of New York (Foley Square).**

---

[2] *See Bullard v. Blue Hills Bank,* 135 S.Ct. 1686, 1692-93, 191 L.Ed. 2d 621 (2015).

[3] The organized nature of this conspiracy stretches back to 2010 and continues forward to the present. In other litigation filed by Abington Capital, Defendant Eckerd expressly represents himself as an officer and employee of the defendant who works with Jason Adkins and again receives a multi-million dollar loan for the acquisition of tires located here in Texas, but which did not and do not exist.

### ADKINS AND ECKERD DIVERT MONEYS TO SHELL COMPANIES AND ENTITIES HELD BY RELATIVES

26. In *Eckerd* and other actions, witnesses have suggested that Adkins was not worried about losing any assets as he had assets "in his wife's name" and "offshore." One witness indicated that Adkins had transferred as much as $12 million abroad.

27. Adkins does not own his family's principal residence at 885 Sternberger Road, Jackson, Ohio. Rather the residence and the 77-acre tract of land are held in Rebekah Holdings. The residence changed ownership multiple times another Adkins creditor, Joseph Fulda of New York, determined there was a risk of fraud and insisted Adkins transfer the residence to Fulda. Adkins still defaulted and Fulda almost foreclosed but Adkins paid him off resulting in the return of the residence to Rebekah Holdings.

28. Eckerd executed a similar plan, diverting money from his family trust, La Mia Bella Famiglia, and from other entities, including Euro Tread Corporation to the Castro Family Trust. As indicated previously, the Castros are the parents of John Eckerd's wife, Lauren Castro Eckerd. According to records, Eckerd and his co-conspirators have transferred at least **$3,453,000** to an account held in the name of **Castro Family Trust at Bank of Texas** since January of this year.

| | | |
|---|---|---|
| La Mia Bella Famiglia | Feb 21, 2018 | $ 372,000.00 |
| Euro Tread Corp. | Mar 20, 2018 | $1,164,000.00 |
| Euro Tread Corp. | May 31, 2018 | $ 917,000.00 |
| Euro Tread Corp. | June 25, 2018 | $1,000,000.00 |

29. On July 10, this Court granted writs of attachment for Euro Tread and the Castro Family Trust were attached. *Order,* at 3. (SEALED Dkt. #27). Days later, Defendant John Eckerd filed a bankruptcy, though, that stayed the writs. Plaintiff never ascertained whether Euro

Tread, the Castro Family Trust or any of the institutions holding their proceeds complied with this Court's orders. **During a meeting of his creditors on August 17, 2018, John Eckerd <u>testified</u> that the Castro Family Trust has been lending him some $50,000 a month.** As a result, Plaintiff has compelling reasons to believe that Eckerd and others are dissipating proceeds, violating the Court's previous orders and defrauding the bankruptcy courts and creditors.

### III.

### CAUSES OF ACTION

### A. FEDERAL CLAIMS

### RICO CONSPIRACY

26. Plaintiff realleges, and incorporate the allege the facts previously stated. Plaintiff expressly pleads caused of action pursuant to the Racketeer Influenced Corrupt Organizations Action. *See* Title 18 U.S.C. § 1962(a)-(d). The evidence and facts adduced establish that (1) Jason Adkins with and through his corporate entities and with other co-conspirators, including but not limited to John Eckerd, and an unnamed co-conspirator has (2) engaged in a pattern of racketeering activity (3) connect to the acquisition, establishment, conduct, or control of an enterprise. These acts and omissions were made intentionally, knowingly, recklessly and with criminal negligence, and injured and damaged Plaintiff. These specific acts and omissions included the following:

a. Acting in concert with Eckerd and other individuals, and entities, Defendant Adkins was responsible for soliciting Plaintiff and others to buy tires and or provide financing for fraudulent transactions.

b. Acting in concert with Adkins and other individuals, and entities, Defendant Adkins

maintained a tire facility in Houston with an inventory of tires that could be repeatedly employed as bait to entice Plaintiff, and others in fabricated sales.

    c. Acting in concert with Adkins and other individuals, and entities, Defendant Adkins caused phony transaction documents to be produced.

    d. Acting in concert with Adkins and other individuals, and entities, Defendant Adkins caused others to confirm shipment and deliveries of tires—which had not occurred—which caused Plaintiff to wire more than $12.9 million in individual wires as delineated in Exhibit "A."

    e. Acting in concert with Adkins and other individuals, and entities, Defendant Adkins intended that Plaintiff rely on these oral and written representations to induce Plaintiff to wire the funds in the transactions depicted,

    f. Acting in concert with Eckerd and other individuals, and entities, Defendant Adkins represented to Plaintiff that the OTR venture was a good investment opportunity, and that Adkins and others were worthy of trust.

    g. Acting in concert with Adkins and other individuals, and entities, Defendant Adkins caused harmful and damaging representations to be made that specific buyers had been identified for the tires existed throughout the United States, and abroad.

    h. Acting in concert with Adkins and other individuals, and entities, Defendant Adkins fraudulently caused Plaintiff to transmit the more than $12.9 million in combined wire transfers in violation of 18 U.S.C §§ 1343, 1957, and 1962.

    i. Acting in concert with other individuals, and entities, Defendant Adkins caused further harm by laundering money, engaging in monetary transactions in property deprived from unlawful activity, transportation of stolen money, and receipt of stolen money in violation of 18 18 U.S.C §§ 1956, 1957, 2314 and 2315.

27. Defendant Adkin's additional pattern of criminal conduct include the following:

a. Committing wire fraud in some 40 different transactions (13 U.S.C. § 1343);

b. Committing conspiracy to commit wire fraud in some forty different transactions (18 U.S.C. § 371);

c. Violating state penal and common law statutes, by and through, the transfers identified. *See* Tex. Pen. Code § 31.05, and Tex. Civ. Prac. & Rem. Code § 134.005; *see further below* ("TUFTA") Texas Business and Commerce Code Sections 24.005 and 24.006.

d. Previous Ponzi and creditor schemes, as identified, with Adkins and other co-conspirators.

## B. PENDENT STATE CLAIMS

### TEXAS THEFT LIABILITY ACT

28. Plaintiff realleges and incorporates all previously stated facts for this cause of action against Defendant Adkins. Plaintiff specifically pleads all causes of action arising from the Texas Theft Liability Act. Tex. Civ. Prac. & Rem. Ann. §§ 134.001 et seq.

### CONSTRUCTIVE TRUST

29. Plaintiff realleges and incorporates all previously stated facts for this cause of action against Defendants. Defendant was an officer, agent, and employee of Landash Corporation and Landash Tx LLC. Plaintiff was a joint venturer with Landash Corporation and Adkins. Defendant breached duties owed to Landash's joint venturer, Plaintiff. These breaches injured Plaintiff, benefitted Defendant, and unjustly enriched Defendant and his co-conspirators. The funds pertaining to these breaches and fraud are traceable and identifiable.

## CONVERSION

30. Plaintiff realleges and incorporates all previously stated facts for this cause of action against Defendant Adkins. Plaintiff owned, possessed, or had the right of immediate possession of property—namely the funds wired and/or the proceeds from the profits of the sales tires from the income and funds obtained from tire transactions. Defendant wrongfully exercised dominion or control over the property; and Plaintiff suffered injury.

## FRAUDULENT TRANSFER

31. Plaintiff realleges and incorporates all previously stated facts for this cause of action against Defendant Adkins and the Castro Family Trust. The above-described acts constitute one or more fraudulent transfers or conveyances of Plaintiff's assets by or to Defendant. In an effort to shield Plaintiff's assets from Plaintiff's lawful abilities to collect a judgment, Defendant fraudulently transferred Plaintiff's and Landash Corporation's assets and cash to Defendant. Defendant received such assets in fraud on Plaintiff and took some or all of the benefits derived from those transfers and assets. As such, Defendant is also a "transferee" under the Texas Uniform Fraudulent Transfer Act ("TUFTA"). Through the fraudulent transfers, Defendant caused Landash Corporation to become insolvent and unable to pay its obligations as they became due, or deepened its preexisting insolvency.

32. Plaintiff's claim as a defrauded party arose before, and its claim, within a reasonable time after of Defendant's fraudulent transfers. The transfers were a fraud against Plaintiff's rights because:

- the transfers were made by Defendant with the actual intent to hinder, delay, or defraud Plaintiff and Landash's other creditors; or

- the transfers were made by Defendant without Landash receiving reasonably equivalent (or any) value in exchange for the property, rights,

and assets transferred;

- Landash was insolvent when the transfers were made or became insolvent as a result of them (given its prior and continued failure to pay its bills); and/or

- Defendant caused Landash to make the transfers to one or more insiders (Eckerd, La Mi Bella Familigia, Trident Lakes Property Holdings, Rebekah Holdings, Jason Adkins, Iron City, Progressive Coal, Euro Tread Corporation) as that term is used by statute;

Defendant's' actual intent to hinder, delay, or defraud Plaintiff and other creditors is evident in that the allegations support that the following badges of fraud are present here:

- The transfers were to insiders;

- the transfers were concealed;

- the transfers comprised substantially all of Landash's assets, leaving it a shell company without contracts, a supply chain, or revenue, and with a mountain of debt;

- Defendant caused Landash to remove or conceal assets by transferring them to co-conspirators and insiders;

- Neither Plaintiff nor Landash did not receive reasonably equivalent value (or apparently any) for the transfers;

- Landash was insolvent at or shortly after the transfers, as shown by its inability to pay the note underlying the judgment, or its bills and taxes, as they came due; and

- The transfers occurred shortly before and after a substantial debt was incurred.

33. Accordingly, Defendant has violated Texas Business and Commerce Code Sections 24.005 and 24.006. Defendant transferred certain assets that are, in reality, controlled by Plaintiff, all in fraud upon Plaintiff. Trident Lakes Property Holdings is at least a transferee of those fraudulent transfers and took neither in good faith (because Trident Lakes Property

Holdings is controlled by insider John Eckerd, who caused the fraudulent transfers) nor for reasonably equivalent value (as the assets were just given away).

## NEGLIGENCE AND GROSS NEGLIGENCE

35. Plaintiff realleges and incorporates all previously stated facts for this cause of action against Defendant. Defendant was an officer, agent, and employee of Landash Corporation and Landash Tx LLC. Plaintiff was a joint venturer with Landash Corporation and Adkins. As a result, Defendant owed a duty of reasonable care to Plaintiff. In the course and scope of managing funds received by Landash, Defendant engaged in a series of negligent, careless, irresponsible, and criminal accounting practices. These acts and omissions proximately caused injuries to Plaintiff.

## HINDERING A SECURED CREDITOR

36. Plaintiff realleges and incorporates all previously stated facts for this cause of action against Defendant. By virtue of the execution of a number of agreements in each transaction, and Plaintiff's advanced payments of funds for each transaction Plaintiff was a secured creditor to the funds. Based the facts and Defendant's unlawful transfers, Defendant have hindered a secured creditor. Tex. Pen. Code § 32.33; *see also* Tex. Civ. Prac. & Rem. Ann. §§ 134.001 et seq.

## CONSPIRACY, AIDING AND ABETTING AND JOINT AND SEVERAL LIABILITY

37. Plaintiff realleges and incorporates all previously stated facts for this cause of action against Defendant. Defendant conspired with John Eckerd and other entities and individuals to defraud Plaintiff. Defendant engaged in a pattern of criminal conduct and committed one or more overt acts to deprive Plaintiff of more than $12 million and employ these valuable resources for their own exclusive enrichment. As a result of this criminal conspiracy,

Plaintiff expressly pleads that Defendant is jointly and several liable to Plaintiff's losses caused by him and and third-party co-conspirators, including Eckerd, and others.

## ALTER EGO AND PIERCING THE CORPORATE VEIL

38. Plaintiff realleges and incorporates all previously stated facts for this cause of action against Defendant. At all points relevant to this litigation—namely from on or before February 18, 2016 to the present day—Eckerd operated through sham entities, which were nothing more than sham corporations intended to conceal his frauds. Throughout this litigation, such entities were undercapitalized, or kept otherwise insolvent, while Defendant Eckerd, and others failed to adhere to the requisite formalities concerning the corporate form for the respective entities. Plaintiff expressly pleads alter ego and piercing the corporate veil.

## DAMAGES AND REMEDIES

39. Plaintiff realleges and incorporates all previously stated facts for this cause of action against Defendant. As a result of the acts of Defendant, Plaintiff has suffered economic damages. Plaintiff alleges that Plaintiff thus seeks

- Actual damages;
- Exemplary damages;
- RICO treble damages;
- Attachment of real property acquired with Plaintiff's converted funds;
- Seizure of chattels acquired with Plaintiff's converted funds;
- avoidance of the transfers to the extent necessary to satisfy Plaintiff's claim;
- attachment or other provisional remedy against the assets fraudulently transferred or other property of Defendant(s);
- an injunction against further disposition of the assets fraudulently;
- transferred or of other property, by Defendant(s) or another transferee, or
- appointment of a receiver to take charge of the asset(s) fraudulently;
- judgment against Defendant, jointly and severally;
- attorneys' fees pursuant to the RICO Act, TUFTA, and the TTLA;
- costs of court;
- pre-judgment interest; and
- and any relief to which Plaintiff is justly entitled.

40. Plaintiff demands a trial by jury.

        Respectfully submitted,

        **HENLEY & HENLEY, P.C.**

        By:   /s/ Geoff J. Henley
               Geoff J. Henley
               State Bar No. 00798253
               2520 Fairmount, Suite 200
               Dallas, Texas 75201
               Telephone Number: (214) 821-0222
               Facsimile Number: (214) 821-0124

        **ATTORNEYS FOR PLAINTIFF**
        **LUCIEN J. TUJAGUE, JR.**